UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | |
|---|---|
| PHILLIP WILLIAMSON & <br> JULIE WILLIAMSON, <br> <br> *Plaintiffs*, <br> <br> v. <br> <br> COCKE COUNTY HMA, LLC, <br> PROFESSIONAL ACCOUNT <br> SERVICES, INC., and MENDELSON <br> FIRM PLLC, <br> <br> *Defendants*. | Case No. 2:18-cv-116 <br> <br> Judge Mattice <br> Magistrate Judge Lee |

**ORDER**

Before the Court is the Motion for Sanctions [Doc. 57] of the Mendelson Firm, PLLC ("Mendelson"), seeking sanctions against Plaintiffs' attorney Alan Lee pursuant to Federal Rule of Civil Procedure 11. Mendelson argues Plaintiffs' counsel violated Rule 11 by failing to sufficiently investigate Plaintiffs' claims and making claims that were not properly grounded in law or fact. Though Plaintiffs' claims were novel, they were not frivolous, nor was Lee's conduct in pursuing them objectively unreasonable. Accordingly, the Motion [Doc. 57] will be denied.

## I.     FACTUAL BACKGROUND

In January 2015, Plaintiff Julie Williamson was treated for the flu at Newport Medical Center. She did not pay the charges for her visit and a collection action was filed against both her and her husband Phillip Williamson in the amount of $682.45. The Mendelson Firm, PLLC represented Cocke County HMA, LLC ("CCH"), doing business as Newport Medical Center, in the collection action.

1

On July 23, 2018, Plaintiff Phillip Williamson filed this action against CCH, Professional Account Services, Inc. ("PASI"), and the Mendelson Firm, PLLC. [Doc. 1]. As later amended, the complaint asserts claims for marital status discrimination in violation of the Equal Credit Opportunity Act ("ECOA"), violations of numerous provisions of the Fair Debt Collection Practices Act ("FDCPA"), and invasion of privacy under Tennessee state law and the FDCPA. [Doc. 23]. On June 27, 2019, the Court granted a motion to dismiss filed by CCH and PASI, dismissing Plaintiffs' ECOA claims and invasion of privacy claims. [Doc. 27]. CCH, PASI, and Plaintiffs subsequently stipulated to the dismissal of any remaining claims against CCH and PASI. [Doc. 52].

On August 19, 2019, Mendelson Firm filed a Motion for Summary Judgment [Doc. 49]. The motion sought judgment as to already-dismissed ECOA claims asserted against CCH and PASI, as well as judgment as to the FDCPA claims asserted against Mendelson. Believing their FDCPA claims to be based on their unsuccessful ECOA discrimination allegations, Plaintiffs filed a response indicating no opposition to summary judgment. [Doc. 53]. The Court entered judgment in favor of Mendelson Firm and dismissed the action on September 30, 2019. [Docs. 55 & 56]. On October 11, 2019, Mendelson filed a Motion for Sanctions [Doc. 57].

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 11 "imposes on attorneys a duty to reasonably investigate factual allegations and legal contentions before presenting them to the court." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 766 (6th Cir. 2014). "This obligation is not static; Rule 11 imposes a continual obligation on attorneys to refrain from pursuing meritless or frivolous claims at any stage of the proceedings." *Darnell v. Arthur*, 782 F. App'x 413, 416 (6th Cir. 2019) (punctuation and citation omitted). By presenting a

2

pleading to the court, an attorney certifies to the best of their knowledge, formed after reasonable inquiry, that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Under Federal Rule of Civil Procedure 11(c), "sanctions may be imposed if 'a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay.'" *Meritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (*quoting Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988)). The test of whether counsel is subject to sanctions is one of objective reasonableness under the circumstances. *Id.*; *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002).

Rule 11(c) requires the movant to formally serve the motion for sanctions in accordance with Rule 5 at least 21 days before filing the motion with the court. Fed. R. Civ. P. 11(c)(2). This "safe-harbor provision" allows the nonmovant time "to reconsider the legal and factual basis for his contentions and, if necessary, to withdraw the offending

3

document." *Penn*, 773 F.3d at 766-67. The motion "must describe the specific conduct that allegedly violates Rule 11(b)." *Id.* If the court determines Rule 11(b) has been violated, it may impose sanctions "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

### III. ANALYSIS

Mendelson Firm argues Mr. Lee violated Rule 11 by:

1. Claiming Defendants pursued Mr. Williamson on a personal guaranty;

2. Claiming Defendant CCH required Mr. Williamson to apply for or guarantee a credit transaction;

3. Claiming Mrs. Williamson was forced to apply for credit;

4. Claiming Mr. Williamson entered into a consensual transaction that made him a "consumer" within the meaning of the FDCPA;

5. Claiming Defendants sought to collect from Mr. Williamson on any basis other than pursuant to liability imposed by the state law and public policy of the State of Tennessee; and

6. Asserting that Mendelson Law Firm, PLLC violated the FDCPA by falsely representing the existence of meaningful attorney involvement.

[Doc. 57 at 2]. In support of its motion, Defendant submits the letters counsel Glenn Walter sent to Lee in accordance with the safe harbor provision. The proposed motions are not attached, but were submitted by Mr. Lee.

Defendant shows that Walter sent the first Rule 11 letter to Lee on September 25, 2018, and a second on November 19, 2018. [Doc. 57-4 at ¶ 7, ¶ 9; Doc. 57-5; Doc. 57-6]. Walter avers "Lee failed to respond to either Safe Harbor letter," but the record suggests otherwise. [Doc. 57-4 at ¶ 12]. Lee filed the First Amended Complaint [Doc. 23] on

4

October 4, 2018, nine days after the first letter. The amended complaint added Mrs. Williamson as a plaintiff and removed allegations that Mr. Williamson was forced to personally guarantee Mrs. Williamson's debt. [Doc. 1 at 7; Doc. 23 at 8-9]. According to Lee, this was the only claim in the original complaint "that Plaintiffs' counsel was able to determine was related to Mendelson's September 25, 2018 Motion." [Doc. 61 at 6]. On October 16, 2018, Lee also emailed counsel for Mendelson, explaining Plaintiffs' position that they were arguing for a new interpretation of the law. [Doc. 61-5].

On November 19, 2018, Walter sent a second email attaching a Rule 11 letter and motion. [Doc. 57-4 at ¶ 9, Doc. 57-6]. The motion is identical to the first motion, except neither the motion nor the certificate of service are dated. [Doc. 61-8 at 2, 4]. Plaintiff's counsel has no record of receiving them by mail. [Doc. 61 at 8]. In any event, Lee did not take further action with respect to the allegations identified in the motion within 21 days. Eleven months later, following the entry of final judgment, Mendelson filed a motion for sanctions.

Mendelson argues Lee filed this case in bad faith with the expectation Defendants would settle "rather than choose to incur the expense of defending a meritless suit." [Doc. 57-1]. Defendant notes Lee served no discovery and took no depositions, failed to compute damages in his initial disclosures, produced documents that allegedly contradicted the allegations in the pleadings, and failed to oppose the summary judgment motion. [Doc. 57-1 at 5]. Defendant argues Plaintiffs' "meaningful involvement" claim was obviously meritless and Lee should have been aware of this had he undertaken reasonable investigation.

Initially, it is not apparent that Mendelson complied with Rule 11(c) by formally serving Mr. Lee with a copy of the November 19th motion for sanctions. However, the

5

identical September 25th motion reflects service in accordance with Rule 5. Accordingly, the Court will address the substance of the motion, including the six violations identified in the motion and eleven other allegations challenged in the briefing.

1. <u>Claiming Defendants pursued Mr. Williamson on a personal guaranty.</u>

This challenge was raised in the September 25, 2020 safe harbor letter. [Doc. 61-4 at 2]. Lee amended the complaint to remove any reference to a guaranty. Walter nonetheless repeated this challenge in the undated motion allegedly served in his November 19, 2018 safe harbor letter. [Doc. 61-7; Doc. 61-8]. Having been timely withdrawn, these allegations cannot support sanctions.

2. <u>Claiming Defendant CCH required Mr. Williamson to apply for or guarantee a credit transaction</u>.

As explained above, reference to a guaranty was removed in the First Amended Complaint. Defendant does not identify in the complaint any allegation that CCH required Mr. Williamson to apply for a credit transaction and the Court cannot locate one. The original complaint *argues* that "[i]f CCH could not legally demand that Mr. Williamson sign an application for credit," it should not be permitted to legally compel him to pay the same debt in the collection action. [Doc. 1 at ¶ 31]. This argument may be novel and ultimately unavailing, but is not false or frivolous. It was also not asserted against Defendant Mendelson.

3. <u>Claiming Mrs. Williamson was forced to apply for credit.</u>

The Court cannot locate language to this effect in either the original or amended complaint.

4. <u>Claiming Mr. Williamson entered into a consensual transaction that made him a "consumer" within the meaning of the FDCPA.</u>

6

Neither the complaint nor amended complaint allege that Phillip Williamson "entered into a consensual transaction." The amended complaint alleges he is a "consumer" within the meaning of 15 U.S.C.A. § 1692a(3), which is to say, he is "any natural person obligated or allegedly obligated to pay any debt."

5. <u>Claiming Defendants sought to collect from Mr. Williamson on any basis other than pursuant to liability imposed by the state law and public policy of the State of Tennessee.</u>

Plaintiffs' argument is that the Tennessee common law doctrine of necessaries permits creditors to discriminate on the basis of marital status, in violation of federal law. The Court has addressed this argument at length and found it unpersuasive. It is not, however, so frivolous as to warrant the imposition of sanctions. Lee made a novel argument, supported by a colorable preemption challenge to a state law doctrine that has been challenged and modified in many states.

Though Mendelson now argues these "groundless assertions" were pursued in bad faith, it did not move to dismiss either complaint or move for sanctions when its safe harbor letters went unanswered. Indeed, it had a second opportunity to move for dismissal when Plaintiffs filed their First Amended Complaint. Instead, it sent a second safe harbor letter and identical motion for sanctions. When the offending portions of the amended complaint were not withdrawn, Mendelson again deferred filing a motion for sanctions, electing to proceed with discovery and seek a judgment. "If, as [defendant] now contends, [plaintiff's] complaint was so obviously foreclosed by existing law, it should have filed a motion to dismiss for failure to state a claim rather than incur the significant discovery expenses it now seeks to recover." *Gibson v. Solideal USA, Inc.*, 489 F. App'x 24, *5 (6th Cir. 2012).

6. <u>Asserting that Mendelson Law Firm, PLLC violated the FDCPA by falsely representing the existence of meaningful attorney involvement</u>.

Neither of the draft motions served on Lee in accordance with the safe harbor provision challenged Plaintiffs' meaningful attorney involvement claim. While the motion served need not be identical to the motion filed, the purposes of the safe harbor provision are thwarted if the motions do not identify substantially similar "specific conduct" alleged to violate Rule 11(b). Fed. R. Civ. P. 11(c)(2). Mendelson has not complied with Rule 11(c)(2) with regard to this purported violation and the Court need not consider it.

The Rule 11 challenge to the meaningful involvement allegation also fails substantively. Defendant argues that because Mrs. Williamson talked to David Mendelson on the phone and received a letter signed by him, Lee should have known Mendelson was "directly and personally" involved with Plaintiffs' account prior to filing. [Doc. 57-1 at 2; *see* Doc. 49-3 at ¶ 9]. But the core allegation of a meaningful involvement claim is that the attorney gave the impression he was involved, but really was not. Additional representations of involvement can hardly refute such an allegation, and Defendants do not provide the content or duration of the call. A signature and the fact of a phone call are insufficient to irrefutably establish the attorney was actually and meaningfully involved in the account prior to collection. And again, if Mr. Mendelson's personal involvement was so facially apparent, one wonders why Defendant did not move to dismiss, rather than twice answer the complaint and proceed to discovery.

Elsewhere in its brief, Mendelson challenges eleven different allegations as violating Rule 11.[1] [Doc. 57-1 at 10]. Though these purported violations overlap with those

---

[1] Defendant does not provide record citations for these allegations, but they appear to be drawn from pages 11 through 13 of the First Amended Complaint. [Doc. 23 at 11-13].

8

identified in the safe harbor motions, some are new and none were specifically identified in the draft motions.[2] Each of the eleven challenged statements asserts a violation of the FDCPA. For example, Defendant says Lee violated Rule 11 by "alleging falsely that Mendelson violated 15 U.S.C. § 1692e by using a false, deceptive, or misleading representation or means in connection with collecting Plaintiffs' debt." [Doc. 57-1 at 9].

Mendelson does not address any of these allegations specifically, arguing instead that "[t]he meritless nature of each of those claims is established by the Court's summary judgment order." [Doc. 57-1 at 10]. Mendelson points to Lee's failure to take discovery and failure defend against summary judgment as evidence that he knew his claims were meritless. In the summary judgment response, Lee states that while Plaintiffs disagreed with the Court's decision on the ECOA claims, "Plaintiffs recognize that the decision also controls the outcome of Mendelson's Motion for Summary Judgment since the underlying basis for the FDCPA claims is the ECOA issues raised by the Motion to Dismiss." [Doc. 53 at 1-2].

Plaintiffs' FDCPA claims test the boundary between novel and frivolous. The allegations are wide-ranging and often convoluted. Nonetheless, Plaintiffs advanced a real argument for preemption of the doctrine of necessaries, claiming collection of the debt was improper and discriminatory. Whether a favorable ruling on the ECOA issue would have allowed the FDCPA claims to proceed is not before the Court.[3] The issues are sufficiently related that Lee's decision to maintain the FDCPA claims until the Court ruled

---

[2] It is not clear to the Court that Mendelson complied with the safe harbor provisions of Rule 11 by identifying these eleven alleged offenses in the draft motion sent to Lee. Nonetheless, because Lee does not raise this procedural deficiency, the Court will consider Defendant's motion on the merits.

[3] Plaintiffs' claim that Mendelson violated the FDCPA by falsely representing meaningful attorney involvement is not contingent on whether collection of the debt from Mr. Williamson was proper. As explained, the motion nonetheless fails procedurally and substantively as to this alleged violation.

9

on the ECOA argument was not unreasonable. The Sixth Circuit has rejected a bid for sanctions in similar circumstances, reasoning that it would effectively make "a plaintiff who elects to forgo formal discovery and whose claims are unable to withstand summary judgment... responsible for paying all fees and costs the defendant incurred in connection with the litigation." *Gibson v. Solideal USA, Inc.*, 489 F. App'x 24 (6th Cir. 2012).

Moreover, Mendelson has made no effort to demonstrate why each of the eleven allegations was frivolous, referring the Court to its own summary judgment order. The motion for sanctions is not governed by the same standard of review and the Court is not obligated to conjure arguments on Defendant's behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (*quoting Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Lee's conduct after the dismissal of the ECOA claims does give the Court some pause. Taken at his word, Lee believed the dismissal of Plaintiffs' ECOA claims was fatal to their FDCPA claims. Rule 11 required him to refrain from pursuing any claims he believed to be meritless. However, the record reflects that he did not further prosecute these claims, conceding defeat in response to Mendelson's summary judgment motion. Mendelson has cited no authority for the proposition that a plaintiff has an affirmative obligation to dismiss the remainder of a complaint after a dismissal of related claims. There is no evidence that Mendelson approached Plaintiffs to urge dismissal at this time and Plaintiffs refused. Instead, Mendelson's attorneys did not to file the motion for sanctions they had already drafted and served on Lee. At great expense, they chose instead to bring the matter to summary judgment. "If [plaintiff's] complaint contained claims so

10

blatantly without merit… one must wonder why [defendant] waited so long to seek sanctions." *Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Invs.*, 951 F.2d 1399, 1413 (3rd Cir. 1991).

## IV. CONCLUSION

For the reasons set forth herein, it is hereby **ORDERED** that the Motion for Sanctions (Doc. 57) is **DENIED**.

**SO ORDERED** this 21st day of August, 2020.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
